## Penn Beverage Company v. Mackey et al.

*James F. Masterson*, for plaintiff.

*G. Coe Farrier*, Assistant City Solicitor, and *John A. Boyle*, for defendants.

MACNEILLE, J., June 24, 1929.—The Penn Beverage Company, a corporation organized under the laws of the State of New Jersey, filed this bill in equity, seeking an injunction against Harry A. Mackey, Mayor of the City of Philadelphia; Lemuel B. Schofield, Director of Public Safety; and William B. Mills, Superintendent of Police for the City of Philadelphia. Plaintiff seeks to restrain the defendants, their agents, employees and subordinates, from interfering with it in the lawful conduct of its business. The bill was filed on June 15, 1929, and a hearing on an application for a preliminary injunction thereunder was fixed for 10 o'clock, Thursday, June 20th. The defendants filed no answer to the averments in the bill, but filed an answer raising questions of law under Rule 48 of the Supreme Court Equity Rules, declaring:

1. The bill is defective, inasmuch as it does not name John M. Monaghan, District Attorney of the City and County of Philadelphia, as defendant.

2. The District Attorney is a proper party defendant.

3. That, by virtue of the so-called Snyder Act, a court of chancery has no jurisdiction in cases of seizure of liquor; and

4. That the plaintiff has an adequate remedy at law to reclaim the goods seized by the procedure provided in the Snyder Act.

*Discussion of answer raising questions of law under Rule 48.*

Defendants seem to have misapprehended the nature of the bill filed. While there are some references to seizures that have been made of the product of the Penn Beverage Company, plaintiff apparently included that as part of the averment to show the intention of the police department to continue interfering with the conduct of the plaintiff's business. There is not and cannot be in this proceeding any effort to reclaim the goods involved, even if illegally seized. Any product of the plaintiff which has been seized has already started on its course in the jurisdiction of the Quarter Sessions Court and must end there. This court has no jurisdiction over the seizures that have been made. If there were such an attempt in this bill, then the defendants would be properly raising questions of law.

The first exception raised by the defendants is that the District Attorney of Philadelphia should be specifically named a party. This must be dismissed because he is in no wise a party to this dispute.

The second point raised by defendants must be dismissed for the same reason.

The third point raises the question that the Snyder Act alone controls, and since it places enforcement in the Quarter Sessions Court of the county in which the seizures are made, a court of equity can have no jurisdiction. This is true, but what is prayed for is an injunction to prevent the police from interfering with the plaintiff's lawful conduct of its business. The point raised is neither material nor relevant to the issue raised by the bill.

The fourth point is dismissed because, in the opinion of the court, there is no adequate remedy at law for the lawful conduct of plaintiff's business.

Therefore, the court dismissed the answer filed by defendants raising questions of law.

## Discussion.

This case then comes on for hearing on bill filed. While there are no averments on the part of defendants to deny the averments of fact contained in the bill, yet at the hearing the court directed and permitted the defendants to offer any testimony that would be relevant had they filed, an answer denying all the averments of the bill.

Plaintiff showed on its own behalf that it, the Penn Beverage Company, is a corporation under the laws of New Jersey engaged in the manufacture and sale of cereal beverages and malt tonic at No. 1306 Fitzwater Street, in the City of Philadelphia. It showed that, for the purpose of the manufacturing, selling and transporting of this tonic, it was in possession of what purport to be duly authorized and lawfully issued permits under the laws of the United States and regulations issued thereunder and also duly authorized by the laws of the State of Pennsylvania. It offered in evidence permit Pa.-L-183, signed by or for Samuel O. Wynne, Prohibition Administrator for this district, which permit is dated Dec. 27, 1928, and is to remain in effect until Dec. 31, 1929. This is what is commonly called a cereal-beverage permit, and under it plaintiff manufactured a beverage known as near beer. The defendants raised no dispute as to this permit or as to the manufacture, sale or transportation of the near beer thereunder. Defendants volunteered to return at once to the plaintiff such seizures of this cereal beverage as they have made.

In addition to this permit there was offered another permit, known as Serial No. Pa.-H.-18558, under which the plaintiff is subject to all the conditions thereinafter stated and to all the provisions of the laws relating to intoxicating liquor of any State in which the privileges therein referred to are exercised. This permit was issued May 5, 1929, by, and signed by, Ambrose Hunsberger, acting prohibition administrator, and permitted the plaintiffs to manufacture and distribute a medicinal tonic, conditioned upon the product not being used for beverage purposes, and the permittee is to give its active aid to the department in preventing it from being so used; and should it at any time be made satisfactorily to appear that it is being used for beverage purposes in any appreciable quantities, and that this cannot be prevented within a reasonable time, the authority for its manufacture and use is thereupon withdrawn.

The second paragraph directs that the permittee may sell the tonic to wholesale druggists, retail druggists, etc., hospitals, physicians, sanitariums, convents and monasteries, and when sold to wholesale druggists or drug jobbers it shall be with the understanding that it may be sold to retail druggists

only, and that should such retail druggists not prevent its use for beverage, then such wholesale druggist or drug jobber shall forthwith take up all remaining stock in such retail druggist's hands and thereafter refuse to furnish him with supplies.

These are the parts of the permit that are pertinent to the present inquiry.

There is no contention that the permittee has violated any of the conditions, except that the defendants sought to show that in one instance, a few hours before this proceeding, a prohibition officer purchased from a druggist sixteen bottles of malt tonic, telling the druggist that he desired it to drink. There is no evidence that this fact had been made known to the plaintiff or that it had any opportunity of knowing. One other instance shown is the sale of this product to the Lehigh Drug Company, which company, after the sale of the goods, came under suspicion as not honestly distributing the tonic for purely medicinal purposes. But in this instance it was shown that Major Wynne's department drew the plaintiff's attention to this and that immediately the plaintiff discontinued business with the Lehigh Drug Company and removed from its premises all of plaintiff's product. The evidence further establishes that its truck brought this product to Philadelphia; that, due to the fact that the truck broke down, it arrived at the plaintiff's place of business late at night, whereupon it was seized by the police. There was no evidence to show that the plaintiff was seeking to evade the requirements of its permit, but there was evidence to show that it was seeking to carry out its obligations to the Government at the very time its truck was seized.

These are the only two instances offered in evidence by defendants to show diversion of the product. It is our opinion that they not only failed to establish a diversion, but that they establish no reasonable ground from which diversion could be deduced.

The court finds, then, that the plaintiff is manufacturing, selling and transporting this medicinal tonic, called malt tonic, under permits issued to it by the Federal Government, and that it has in every way obeyed the terms, rules and regulations of the permits and that there has not been shown to this court even the suspicion of a violation; that it has manufactured in accordance with the permit; has sold only to the parties designated by the permit, and has immediately obeyed notice sent by the department to take the goods back from a suspected violator of faith; and although permitted to manufacture tonic containing 2 per cent. of alcohol, it has in many instances manufactured it containing 1.61 per cent., and in no instance has it contained over 2 per cent.

There remains yet to be determined whether or not the Federal Government has any right to issue the permit, as it has assumed to do. To determine this necessitates an inquiry into the state of the prohibition law. The prohibition law is based entirely on the 18th Amendment to the Constitution of the United States. Section 1 provides: "The manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States . . . for beverage purposes is hereby prohibited." Section 2 provides: "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation." In order to effectuate this amendment, Congress passed what is commonly known as the Volstead Act, which provides: "When used in Title II and Title III of this Act, the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, etc.," and, in addition, any spirituous, malt or fermented liquor, whether medicated or not, containing one-half of 1 per cent. of alcohol by volume which are fit for use for beverage purposes: *Provided*, that the foregoing definition shall not extend to beverages

that contain less than one-half of 1 per cent. of alcohol by volume. Section 7 of Section 1, Title II, says: "Regulation shall mean any regulation prescribed by the commissioner with the approval of the Secretary of the Treasury for carrying out the provisions of this Act, and the commmissioner is authorized to make such regulations." This act has been amended by section 4 of Nov. 23, 1921, 42 Stat. at L. 222. Section 4 of the National Prohibition Act provides, *inter alia*, as follows: "*The articles enumerated in this section shall not, after having been manufactured and prepared for the market, be subject to the provisions of this Act if they correspond with the following descriptions and limitations:*

"'(b) Medicinal preparations manufactured in accordance with formulas prescribed by the United States Pharmacopœia . . . that are unfit for use for beverage purposes.'"

Under these sections, then, the prohibition department assumed to issue the permits hereinbefore referred to, and they did so under regulation 60, revised March 19, 1924, section 802. *The question is now raised for the first time* as to the right of the Federal Government to issue permits under this regulation. This practice has been acquiesced in and this course of conduct pursued without questioning until now. All the authorities seem to indicate that the Federal Prohibition authorities are within their rights in issuing these permits. They are required, however, to exercise discretion in determining whether the product is for medicinal purposes or for beverage purposes. The defendants have raised the point that it is for the chancellor in this hearing to determine whether or not this product is fit for beverage purposes. It would seem that this matter should be decided by the regulatory authorities, but whether this be true or not, the court has taken such evidence as the defendants chose to offer on the subject.

Just exactly one-half of the chemists or doctors called to the stand said that it could be used for beverage purposes, and the other half said it was absolutely unfit for beverage purposes. They all admit that it has been used for many years for so-called medicinal purposes; that it contains starches and sugars practically in a predigested form, and that it has always been considered of value as a form of nourishment for nursing mothers. The evidence further shows the tonic is manufactured in accordance with formulas prescribed by the United States Pharmacopœia. There has been no evidence offered to the court as to the consumption of this tonic, except the only instance of the prohibition officer who drank two bottles.

However, in the permit itself ample provision is made to control the situation, even if it appears to the department that there may be difficulty in preventing this product from being used as a beverage. If there is such difficulty, the permit may be immediately withdrawn and the permittee ordered to recover from every person the product which has been sold to him. This seems to be a very effective remedy, and if there is even danger of it being used for beverage purposes, there is no reason why the department should not exercise this power under the permit. The administration of the prohibition enforcement regulations in this district seems to be in very competent hands, and the court assumes that there will be no hesitancy on their part in exercising their authority. We have great confidence in this, knowing, as we do, that this department, through its many agents, has the very best facilities to obtain this information and will act immediately and effectually upon it. We are of opinion that the Federal permits have been regularly and properly issued and have been obeyed.

Assuming that the Federal permits have been properly issued and have been lived up to by the plaintiff, there remains to consider the further question as to the plaintiff's rights under a permit which it has offered in evidence which has been issued by the authorities of the Commonwealth of Pennsylvania. Plaintiff offers in evidence permit issued by the Pennsylvania Alcohol Permit Board, Form 3, General No. 203, Serial No. G-67, authorizing the Penn Beverage Company to operate a brewery or cereal beverage plant at No. 1306 Fitzwater Street, Philadelphia, saying: "This permit authorizes the permittee to manufacture . . . use in the process of manufacture . . . sell at wholesale and remove alcohol or alcoholic liquid produced in the process of operating a brewery or cereal beverage plant, all in full accordance with the laws and regulations of the United States and the Commonwealth of Pennsylvania." This permit should be read in the spirit of the Pennsylvania Prohibition Act, commonly known as the Snyder Act. Section 2 *(a)* sets forth: "The phrase 'intoxicating liquor' as used in this act shall mean anything found and determined, from time to time, to be intoxicating by Act of Congress passed pursuant to, and in the enforcement of, the Constitution of the United States." Section 13 of the same act provides: "In any prosecution under this act when proof has been given in evidence of the manufacture, sale, etc., the same shall be *prima facie* evidence that the same was so manufactured, sold, etc., for beverage purposes, but this presumption shall not apply to the manufacturing, furnishing, transportation, possession, delivery, etc., of medicines nor to the sale of such by or to registered pharmacists and regularly licensed physicians or others lawfully authorized to buy and sell such medicines, nor to the sale of intoxicating liquor for medicinal purposes" by or to such party, "nor shall it apply to anything unfit for beverage purposes, etc."

Section 17 provides (the board created under this act) : "The board shall have the power to make and promulgate appropriate rules and regulations for carrying into effect the provisions of this act: *Provided*, That, as far as practicable, the rules and regulations of the board shall conform to the rules and regulations promulgated by the appropriate agency of the government of the United States for carrying into effect the provisions of any act or acts of Congress regulating, etc., of any alcohol or alcoholic liquid or intoxicating liquor."

There seems to be ample authority under the Snyder Act for the State board to issue its permit. It does not appear that Pennsylvania has gone any further, nor has it intended to go any further, than the Federal Government itself has gone in controlling and regulating the sale of liquids with alcoholic content. It would be indeed difficult for the State Government to set up as elaborate methods and machinery as are already in use by the Federal Government. Apparently, the whole spirit of the Pennsylvania act was to concur with the Federal Government in an even and uniform enforcement of the Federal Government regulations.

The court is not unmindful of the fact that the prohibition law should be liberally construed to effectuate enforcement, and this in spite of the fact that it is contrary to the principle that penal statutes must be strictly interpreted, but the court is mindful of the fact that the enforcement of this law is one of the Government's greatest problems; that it is a law of the land adopted by a majority of its citizens, and that, although sumptuary in character, it is meant for the sanitation of the people, for their moral uplift and physical and mental betterment; that every aid should be given to effectuate this purpose. It is a law that should be enforced by constituted authorities, and yet its

greatest enemies may prove to be the officials or persons who attempt such drastic interpretation as to deny to the citizenry, or part of the citizenry, those preparations which are regarded by them as medicinal in value. Ordinarily, this question should not be determined by the opinion of the consumer, but we have the opinion of the Prohibition Department of the Federal Government, backed up as it has been by the testimony in this case, that this preparation is medicinal in character. It is possible for it to be used as a beverage by some, just as there are some foolish enough to drink laudanum for that purpose, but it is evident that this alone does not destroy its character as medicine. Apparently, the Federal authorities prefer to await evidence that it is difficult to prevent it being used as a beverage before they act. It may be that the time has arisen for them to act, but, as already indicated, the court feels that if they are not already in possession of the facts, they should immediately ascertain them. If there is a real difficulty in preventing this product from being used as a beverage, the remedy is in their hands. The court has not found in this case any evidence that the plaintiff has been violating any law. In view of the fact that the police authorities of the City of Philadelphia have indicated their belief that the conduct of the plaintiff, as shown in the testimony, is a violation of the law and that they will proceed to molest it in the maintenance of its business, a preliminary injunction should issue. The court will sign a decree in accordance with this opinion, restraining the police authorities from interfering with the plaintiff in the lawful conduct of its business.

### Decree.

And now, to wit, June 24, 1929, this cause having come on to be heard on bill, answer and proofs, on motion for preliminary injunction, and having been argued by counsel, thereupon, on consideration thereof, it is ordered, adjudged and decreed that Harry A. Mackey, Mayor of the City of Philadelphia; Lemuel B. Schofield, Director of Public Safety for the City of Philadelphia; and William B. Mills, Superintendent of Police for the City of Philadelphia, their agents, employees, subordinates, and all other persons acting under their authority or for them, be and they are hereby restrained and enjoined from preventing the complainant from carrying on its lawful business in a lawful manner or from in any way interfering with plaintiff in the lawful conduct of plaintiff's business and from seizing the product of plaintiff known as Malt Tonic, made in accordance with its Federal permit, while same is being conducted lawfully from plaintiff's plant to its customers.

Bond to be entered in the sum of $5000.